**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

DAVID JENKINS,

                                        Petitioner,

            v.                                                    No. 03-CV-1172
                                                                  (LEK/DRH)

DAVID M. UNGER, Superintendent,

                                        Respondent.

-------------------------------------------------------------

**APPEARANCES:**                              **OF COUNSEL:**

DAVID JENKINS
Petitioner Pro Se
No. 00-A-5144
Groveland Correctional Facility
7000 Sonyea Road
Sonyea, New York 14556

HON. ANDREW M. CUOMO                    MARIA MORAN, ESQ.
Attorney General for the State          Assistant Attorney General
   of New York
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Petitioner pro se David Jenkins ("Jenkins") is currently an inmate in the custody of the

New York State Department of Correctional Services ("DOCS") at Groveland Correctional

Facility.  Jenkins was found guilty on August 30, 2000 of one count each of sexual abuse in the

---------------------------

        [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

first degree and attempted sodomy in the first degree after a non-jury trial in St. Lawrence County.  Jenkins was adjudicated a second felony offender and was sentenced to concurrent determinate terms of imprisonment, the maximum of which is nine years.  Jenkins now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) there was insufficient evidence to support his conviction, (2) the prosecutor engaged in misconduct, (3) the verdict was repugnant, and (4) he was denied the effective assistance of trial counsel.  For the reasons which follow, it is recommended that the second amended petition be denied.[2]


## I. Background

Beginning on May 30, 1999, investigators from the New York State Police and the St. Lawrence Department of Social Services investigated the report of ten-year-old K.G.[3] that

---

[2]  Jenkins' original petition was dismissed with leave to file an amended petition for failure to provide a coherent set of facts to support his claims.  Docket No. 5.  Jenkins thereafter filed his first amended petition, and memorandum of law in support thereof, alleging (1) the evidence was insufficient to support the verdict, (2) certain prosecutorial misconduct denied him a fair trial, (3) the verdict was repugnant and (4) he was denied effective assistance of counsel.  Docket Nos. 6, 10.  After a response was filed, the action was stayed so that Jenkins could exhaust additional ineffective assistance of counsel claims in state court.  Docket No. 19.  Upon removal of the stay, Jenkins filed a motion to amend his first amended petition to allege, in addition to his original four claims, additional ineffective assistance of counsel claims as well as allegations of (1) harsh and excessive sentence, (2) improper and prejudicial conduct not appearing on the record, (3) newly discovered evidence, and (4) mental disease or defect.  Docket Nos. 32, 37.  This Court denied Jenkins' motion to amend as to the latter four claims but permitted Jenkins to enlarge his original ineffective assistance allegations.  Docket No. 41 at 9-10, 12.  Accordingly, the claims in Jenkins' second amended petition subject to federal habeas review are as listed above.

[3]  Under New York law, "[t]he identity of any victim of a sex offense . . . shall be confidential. No . . . court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection."  N.Y. Civ. Rights Law § 50-b.  In light of this provision, the victim will be referred to herein as "K.G." so as to ensure her privacy.  See Lucidore v. New York State

Jenkins had recently subjected her to sexual contact on at least one occasion.  T. 77-78, 118-19.[4]   Jenkins resided with K.G. and her family, which included her mother, Lisa Wells, her siblings, Aaron and Amanda, and Lisa's boyfriend, Edward "Shaggy" Seror.   T. 14-15. Specifically, K.G. informed Seror that while she watched cartoons in Jenkins' bedroom one night when the family was asleep, Jenkins touched her "where he shouldn't have touched me where I go to the bathroom."  T. 60, 105.  At trial, K.G. described the details of the sexual abuse.  T. 50-59.

Based on the child's allegations, investigators located Jenkins and requested that he accompany them for questioning.  T. 82-84.  Jenkins was questioned by a New York State trooper and provided a written statement wherein he admitted to "cuddling" and "laying" with the children on his bed.  RA. 88a-90a.[5]  However, Jenkins denied molesting K.G.  See id.; see also T. 141-42.

On December 16, 1999, Jenkins was indicted and subsequently arrested.  RA. 21a-24a. Upon consulting with his defense counsel, Jenkins waived his right to a jury trial.  T. 2-4.  After a bench trial, Jenkins was found not guilty of sodomy in the first degree and guilty of the charges referenced supra.  T. 162-63.  He was sentenced as indicated above.  ST. 6.[6]  On

_____

Div. of Parole, 209 F.3d 107, 109 n. 4 (2d Cir. 2000) (demonstrating that substantial compliance with this statute is obtained where the court refers to the victim by use of initials).

[4]  "T." followed by a number refers to the pages of the trial transcript included with respondent's answer.  Docket No. 47, Ex.1.

[5]  "RA." followed by a number refers to the pages of the record on appeal included with respondent's answer.  Docket No. 47, Ex. 3.

[6]  "ST." followed by a number refers to the pages of the transcript of Jenkins' sentencing included with respondent's answer.  Docket No. 47, Ex. 2.

December 12, 2002, the Appellate Division unanimously affirmed the convictions and sentence. People v. Jenkins, 751 N.Y.S.2d 648, 650-51 (3d Dep't 2002).[7]  Application for leave to appeal to the New York Court of Appeals was denied on February 26, 2003.  People v. Jenkins, 787 N.E.2d 1172 (N.Y. 2003).  Jenkins also filed a motion to vacate his sentence, which was denied on September 29, 2005.  See Docket No. 47, Exs. 10-17.  Application for leave to appeal that decision was denied on November 29, 2005.  See id.  This action followed.


## II. Discussion

### A.  Standard of Review under the AEDPA

To succeed on habeas review under the deferential standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must demonstrate that a state court adjudicated the claim on the merits, as opposed to on a procedural or other ground, and that adjudication was (1) contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented to the state court.  See 28 U.S.C. § 2254(d)(1)-(2); see also Hines v. Miller, 318 F.3d 157, 160 (2d Cir. 2003) (citing Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)).

_____

[7] Although the Appellate Division affirmed the terms of Jenkins' commitment, that court vacated the sentence and remitted the matter to County Court for resentencing due to a discrepancy between the sentencing minutes and the Sentence and Commitment Statement of Conviction form filed in County Court.  Jenkins, 751 N.Y.S.2d at 651.  On remand, the County Court reiterated that Jenkins was properly sentenced to determinate terms of seven and nine years but ordered a corrected commitment order filed with the Department of Corrections in accordance with the Appellate Division's decision.  Docket No. 47, Ex. 9.

**B.  Insufficiency of Evidence**

Jenkins contends that the evidence supporting his convictions for sexual abuse in the first degree and attempted sodomy in the first degree was legally insufficient.  See Docket No. 42.

A petitioner who claims that the evidence was not sufficient to sustain a conviction bears a very heavy burden.  United States v. Pierce, 224 F.3d 158, 164 (2d Cir. 2000).  The Second Circuit has maintained that the weight of the evidence and the credibility of the witnesses are determinations for the factfinder and are not grounds for reversal.  See United States v. Vasquez, 267 F.3d 79, 91 (2d Cir. 2001).  "[T]he critical inquiry on review of the sufficiency of the evidence . . . [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry asks a court to determine if, "after viewing the evidence in the light most favorable to the prosecution, . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319 (emphasis in original); see also Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).  When considering the sufficiency of the evidence of a state conviction, the habeas court must examine the substantive state law elements of the criminal offense.  Fama, 235 F.3d at 811; see also Jackson, 443 U.S. at 324 n.16.

New York Penal Law § 130.65(3) provides that a person is guilty of sexual abuse in the first degree when he subjects another person who is less than eleven years old to sexual contact.  "Sexual contact" is defined as

> any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party.  It includes the touching of the actor by the victim, as well as the touching of the victim by

the actor, whether directly or through clothing.

N.Y. Penal Law § 130.00(3).  In addition, the former sodomy statute provides that a person

is guilty of sodomy in the first degree when he engages in deviate sexual intercourse with

another person who is less than eleven years old.  N.Y. Penal Law § 130.50(3) (2000).[8]

"Deviate sexual intercourse" was defined as "sexual conduct between persons not married

to each other consisting of contact between the penis and the anus, the mouth and penis,

or the mouth and the vulva."  N.Y. Penal Law § 130.00(2)(2000).[9]  A person is guilty of

attempt to commit a crime "when, with intent to commit a crime, he engages in conduct

which tends to effect the commission of the crime."  N.Y. Penal Law § 110.00.

The trial testimony reveals that Jenkins lived in the victim's house from April 10, 1999

until May 30, 1999.  T. 15.  K.G. testified that her date of birth is March 16, 1989, and that

she therefore was ten years old during the time Jenkins resided with her family.  See T. 28.

Both the victim and Jenkins testified that K.G. and her siblings often watched television in

Jenkins' bedroom, where they sat on the bed with him.  T. 40-43, 142-43.  K.G. testified that

one night while her family was asleep, she was laying on Jenkins' bed facing the television

and Jenkins was behind her.  T. 51-52.  She heard Jenkins sit up in bed, and then she

heard a box open and paper rattling.  T. 52-53.  Subsequently, K.G. heard what appeared to

---

[8]  Effective November 1, 2003, section 130.50 of New York's Penal Law was amended to define the crime of "criminal sexual act in the first degree," which provides, in relevant part, that "[a] person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person . . . [w]ho is less than eleven years old . . . ."  N.Y. Penal Law § 130.50(3).

[9]  Effective November 1, 2003, section 130.00 of New York's Penal Law was amended, in pertinent part, to define "oral sexual conduct" and "anal sexual conduct."  N.Y. Penal Law § 130.00(2).

be the pop of an elastic waistband on shorts.  T. 53.  Jenkins then moved closer to her, pulled her pants and underwear down to her ankles, and placed his arms around her stomach.  T. 53-54.  Jenkins rubbed her breasts as well as her "private."  T. 54-55. Thereafter, Jenkins pulled his shorts off and put his "private" next to her "crack."  T. 55-56. K.G. testified that she tried to move away from Jenkins, but he "stiffed his arm tighter".  T. 56.  Jenkins remained behind K.G. and started to move his private up and down between the crack of her buttocks.  T. 56-57.  K.G. testified that Jenkins then said "ouch" and moved away from her.  T. 57.  K.G. sat up on the bed and saw a "clear thing, clear paper" around Jenkins' private, and observed "milky stuff on the inside of . . . that paper."  T. 57-58.  At some point after this incident, K.G. told Edward Seror that Jenkins "touched me where he shouldn't have touched me where I go to the bathroom."  T. 105.

The record thus establishes that K.G. was less than eleven years old and that Jenkins caused sexual contact between his penis and K.G.'s buttocks.  This evidence sufficed to demonstrate the sexual contact and attempted deviate sexual intercourse requirements of the statutes.  Presented with this record, the Appellate Division considered and rejected the arguments Jenkins raises here regarding insufficiency of the evidence. See Jenkins, 751 N.Y.S.2d at 650.

The record clearly demonstrates that the evidence supporting Jenkins' convictions for sexual abuse in the first degree and attempted sodomy in the first degree was sufficient and that the state court's rejection of Jenkins' contention was not unreasonable. Therefore, the second amended petition on this ground should be denied.

## C.  Ineffective Assistance of Counsel

### 1. Exhaustion

Jenkins contends that his trial counsel failed to elicit various testimony from social worker Melvin Barnes on direct examination.  Docket No. 10 at 12.  Jenkins further alleges that defense counsel failed reasonably to investigate the existence of telephone records substantiating his claim that K.G. placed a telephone call to him on May 30, 1999.  Docket No. 48.[10]  A review of the record reveals that Jenkins has not presented these allegations of ineffective assistance of counsel in the state courts, either in his direct appeal or in his motion to vacate.

An application for a writ of habeas corpus may not be considered until a petitioner has exhausted all remedies available in state court.  28 U.S.C. § 2254(b).  To satisfy the exhaustion requirement, a petitioner must "fairly present" any constitutional claims to the state courts.  Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  A claim is "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court" and are alerted to the constitutional nature of the claim.  Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982).  Regarding an ineffective assistance of counsel claim, "[e]ach

---

[10]  These claims were raised in Jenkins' memorandum of law in support of his first amended petition and in his traverse in support of his second amended petition, respectively.  Docket Nos. 10, 48.  The Second Circuit has commanded federal district courts to construe pro se submissions liberally and to interpret them "to raise the strongest arguments that they suggest."  Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); see also Phillips v. Girdich, 408 F.3d 124, 130 (2d Cir. 2005); Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001); Williams v. Kullman, 722 F.2d 1048, 1050-51 (2d Cir. 1983); Bido v. Miller, No. 00 CV 8462, 2005 WL 1241898, at *1 (S.D.N.Y. May 24, 2005) (citations omitted).  Mindful of this directive, the Court will consider these ineffective assistance claims as independent grounds for federal habeas relief.

factual claim made in support . . . must be fairly presented to a state court before a federal habeas court may rule upon it."  Panezo v. Portuondo, No. 02-CV-1522, 2003 WL 23198781, at *10 (E.D.N.Y.  Nov. 6, 2003) (citing Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991)).

Jenkins has failed to present fairly these theories of ineffective assistance to the state courts and, accordingly, these allegations remain unexhausted.[11]  However, under the AEDPA, a federal district court has the authority to deny an unexhausted claim on the merits rather than require exhaustion.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where the unexhausted claim is "patently frivolous" or it is "perfectly clear that the petitioner does not raise even a colorable federal claim," the claim is subject to denial.  Russell, 2006 WL 1555468, at *16 (quotations omitted).  In the present petition, the above ineffective assistance of counsel claims fail either standard as they are both patently frivolous and entirely meritless.

To establish ineffective assistance of counsel as guaranteed by the Sixth Amendment, a petitioner must demonstrate that counsel's performance was deficient and that this deficiency prejudiced the petitioner's defense.  United States v. DeJesus, 219 F.3d

---

[11]  Although respondent does not argue that the Court cannot consider these claims due to Jenkins' failure to exhaust, the Court notes that the habeas corpus statute provides that a state's failure to raise exhaustion as a defense to a charge does not operate as a waiver of such defense.  See 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").  As such, federal district courts may sua sponte address a petitioner's failure to exhaust a claim in the absence of the respondent's express waiver.  See Lurie v. Wittner, 228 F.3d 113, 123 (2d Cir. 2000); Russell v. Ricks, No. 02 CV 0940, 2006 WL 1555468, at *15 (N.D.N.Y. May 31, 2006) (Kahn, J. & Peebles, M.J.).

117, 121 (2d Cir. 2000) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).  A

petitioner must establish that counsel's errors were so serious that the petitioner was

deprived of a fair trial and there was a reasonable probability that, but for counsel's

unprofessional errors, the results of the proceeding would have been different.  <u>Strickland</u>,

466 U.S. at 686.

The proper measure of attorney performance is an objective standard of

reasonableness in the totality of the circumstances under prevailing professional norms.  <u>Id.</u>

at 688; <u>Purdy v. United States</u>, 208 F.3d 41, 44 (2d Cir. 2000).  Strategic choices made

after investigation of the relevant law and facts are normally not subject to challenge and

the reviewing court must be "highly deferential" to counsel's performance.  <u>Strickland</u>, 466

U.S. at 689.

Here, Jenkins contends that his counsel failed to elicit testimony from Barnes

regarding his conversations with Amanda, K.G.'s seven-year-old sister, about other

incidents of alleged abuse by Jenkins against K.G.  Specifically, while K.G. indicated that

Amanda informed her that she witnessed Jenkins touch K.G. while K.G. slept in her bed,

Amanda denied witnessing such incidents when speaking with Barnes.  <u>See</u> RA. 80a-87a;

<u>see also</u> T.61-62.  A review of the record indicates that such testimony was, at best, of

minimal relevance to the incident of sexual abuse at issue at trial.  T. 61-62, 122-26.

Amanda's statements to Barnes were collateral to the incident of abuse that formed the

basis of Jenkins' indictment and testified to by K.G. at trial.  Moreover, the social worker's

discussions with Amanda likely constituted inadmissible hearsay.  Counsel's decision not to

explore such testimony was sound trial strategy, which may not be second-guessed on

habeas review.  <u>See</u> <u>United States v. Helgesen</u>, 669 F.2d 69, 72 (2d Cir. 1982).

Jenkins further cites to his attorney's failure to seek telephone records which would have supported his contention that K.G. had been threatened by Edward Seror and her mother after telephoning Jenkins to pick her up.  See Docket No. 47, Ex. 12 at 4.  However, Jenkins admitted that he was unable to assist his trial lawyer in providing the necessary information for use at trial because he could not remember the details of the telephone call due to his alleged memory loss.  Docket No. 47, Ex. 11 at 4, 6.  As such, the records would have been useless to Jenkins' defense, and he cannot now fault his attorney for his alleged failure to procure them.

These unexhausted claims of ineffective assistance of counsel, therefore, are patently frivolous, entirely meritless, and should be denied.

**2. Merits**

**a.  Claims Raised on Direct Appeal**

Jenkins also contends, as he did on direct appeal, that his defense counsel improperly called Seror as a defense witness because Seror's testimony served only to corroborate K.G.'s allegations.  See Docket No. 10 at 11; see also Docket No. 47, Ex. 4 at 38-42.  Respondent argues that this contention is meritless.  Docket No. 47, Mem. of Law at 13-14.  The Appellate Division rejected Jenkins' claim that his trial counsel improperly called Seror as a defense witness, holding that:

> [I]t appears that the witness was called to show that he had a motive to fabricate the allegations, a tactic which was part of the overall defense strategy, namely, to portray the People's evidence as unreliable.  Losing trial tactics or strategy . . . do not rise to the level of ineffectiveness.  Viewing the evidence, the law and the circumstances of this case in their totality, we find that defendant received "meaningful representation."

-11-

Jenkins, 751 N.Y.S.2d at 651 (internal quotations and citations omitted).

Significantly, state court findings on matters related to counsel's strategic choices are conclusive on the court reviewing the habeas petition if supported in the record. See 28 U.S.C. § 2254(d); see also Sumner v. Mata, 455 U.S. 591, 592 (1982). At trial, Seror testified that he had a prior disagreement with Jenkins regarding Jenkins spending time with the victim's mother, who was Seror's girlfriend. T. 101. Counsel evidently weighed the benefit of this testimony, which established a motive for Seror to fabricate the abuse allegations, with the possibility of eliciting additional testimony tending to favor the prosecution. As mentioned above, such strategic decisions may not be disturbed on habeas review. Helgesen, 669 F.2d at 72 (discussing the Second Circuit's "reluctance to second-guess matters of trial strategy simply because the chosen strategy has failed"). Counsel's decision to call Seror clearly was not unreasonable under Strickland.[12] The Appellate Division's findings are plainly supported by the record and, as such, this allegation of ineffective assistance of counsel lacks merit.

Therefore, the second amended petition as to this ineffective assistance of counsel claim should be denied.

**b. Claims Raised in Motion to Vacate**

Jenkins further alleges, as he did in his motion to vacate pursuant to New York Criminal Procedure Law ("CPL") § 440.10, that his trial counsel failed to: (1) raise alleged threats made by Lisa Wells and Seror against potential witnesses; (2) to call neighbor Dale

---

[12] The Supreme Court has declared that "the rule set forth in Strickland qualifies as 'clearly established Federal law[.]'" Williams v. Taylor, 529 U.S. 362, 391 (2000).

Gilbo as a witness; (3) have Seror declared hostile and to question him regarding K.G.'s alleged May 30, 1999 telephone call to Jenkins; (4) raise a conspiracy defense; (5) impeach Wells regarding the layout of the apartment; (6) hire an expert to testify about misattribution; (7) elicited that Jenkins suffered from carpal tunnel syndrome and therefore could not perpetrate the alleged sexual acts on the victim; (8) assert that Wells and Seror were drug dealers; (9) preserve the claim of repugnant verdict for appellate review; and (10) preserve the claim of prosecutorial misconduct for appellate review.[13]  Respondent submits that these allegations are time-barred because they do not sufficiently relate back to Jenkins' first amended petition and, in any event, are meritless.  Docket No. 47, Mem. of Law at 14-16.[14]

As a threshold matter, respondent submits that the ineffective assistance of counsel claims raised in Jenkins' 440.10 motion are time-barred because they are untimely and do not sufficiently relate back to the theories of ineffective assistance alleged in Jenkins' first amended petition.  Docket No. 47, Mem. of Law at 14-16.[15]  In his first amended petition,

---

[13]  These ten claims were raised for the first time in Jenkins' motion to amend his first amended petition.  Docket No. 32.  This Court granted Jenkins' motion to amend with respect to his supplemental ineffective assistance of counsel claim, and ordered the filing of Jenkins' proposed amended petition as the second amended petition in this action.  Docket No. 41 at 9-10, 12.  While the Court's order specified that Jenkins could enlarge his original ineffective assistance of counsel claim to include contentions nine and ten listed above, see id. at 9-10, the Court will examine all ten allegations herein in the interest of construing pro se submissions liberally.  See Burgos, 14 F.3d at 790; see also Phillips, 408 F.3d at 230; Green, 260 F.3d at 83.

[14]  The Court permitted respondent to address both the merits and the timeliness of Jenkins' ineffective assistance of counsel claim in his response to the newly amended petition.  Docket No. 41 at 10.  However, respondent curiously addresses only claims one through eight, and does not assert any argument as to allegations nine and ten.

[15]  This Court previously determined that the statute of limitations expired with respect to any new claims on May 27, 2004.  See Docket No. 41 at 3-4.

Jenkins alleged ineffective assistance of counsel only as to counsel's error in calling Seror as a defense witness, see Docket No. 10 at 11-12, and counsel's failure to elicit certain testimony from Barnes, see Docket No. 10 at 12.  An amendment relates back to the date of the original pleading when the claim or defense asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Fama, 235 F.3d at 815 (quoting Fed. R. Civ. P. 15(c)) (internal quotations omitted).  In making this determination, the court must find that the original petition "gave the defendant fair notice of the newly alleged claims."  Id. (citing Wilson v. Fairchild Republic Co., 143 F.3d 733, 738 (2d Cir. 1998)).  As asserted by the Supreme Court, a habeas claim relates back to a claim filed within the limitations period under Fed. R. Civ. P. 15(c) "[s]o long as the original and amended petitions are tied to a common core of operative facts."  Mayle v. Felix, 125 S.Ct. 2562, 2574-75 (2005).

Jenkins' allegations regarding his counsel's failure to preserve prosecutorial misconduct and repugnant verdict claims arising from the same common core of operative facts as his original habeas petition.  Although these ineffective assistance claims are based on new theories of relief, they arise from the substantive allegations of prosecutorial misconduct and repugnant verdict raised in his first amended petition.  See Serrano v. Burge, No. 03CIV8639, 2005 WL 2063675, at *4 (S.D.N.Y. Aug. 22, 2005) (Ellis, M.J.) (stating that petitioner's ineffective assistance claim in amended petition related to counsel's failure to raise substantive issues already alleged in original petition), adopted, 2005 WL 2170362 (S.D.N.Y. Sept. 8, 2005) (Berman, D.J.).  However, since the majority of Jenkins' remaining ineffective assistance claims are wholly unrelated to the original allegations of his first amended petition, it is doubtful that respondent had fair notice of these theories.

-14-

Nevertheless, the simplest course is to address Jenkins' proposed new claims of ineffective assistance of counsel on the merits.  See,e.g., Fama, 235 F.3d at 816 ("To simplify this case, we will assume arguendo that, pursuant to Rule 15(c), this evidence does relate back to Fama's original petition, and hence the amendment is permissible."); Williams v. Donnelly, No. 00-CV-4445, 2005 WL 2290592, at *29 (E.D.N.Y. Apr. 12, 2005) (Mann, M.J.) ("[T]he simplest and wisest course is to slice through the tangles in a different direction.") (citation omitted), adopted, No. 00-4445, Docket No. 26 (E.D.N.Y. Sept. 16, 2005) (Trager, J.).

The County Court rejected the above ineffective assistance of counsel claims on the merits, finding that:

> While it is true that some of the assertions made here are beyond those that appear directly in the record, and therefore may not have been reachable on direct appeal, they are also highly speculative.  Primarily they take the form of criticizing unsuccessful trial tactics after an adverse result.  As the appellate courts have repeatedly held, losing tactics are not per se indicative of the ineffective assistance of counsel.
>
> Defense counsel has asked for a hearing in order to develop the record and facilitate decision on the issues raised.  Yet there are already substantial assertions of fact which are not contested.  The questions presented here are questions of law.  The court is not in need of taking proof in order to determine what happened or was said or done; rather, the parties disagree about what those events or facts mean.  On each of the grounds raised, the court finds that defendant has failed to come forward with any proof of more than his own assertions, and these are not sufficient to undermine the validity of his conviction.

Docket No. 47, Ex. 17.

This Court agrees that contentions one through eight are simply critiques of trial strategy motivated by hindsight.  See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (asserting that petitioner offered little more than "hindsight to second-guess [counsel's]

-15-

strategy choices"). The alleged errors are insufficient to meet the demanding two-pronged

standard of Strickland. Rather, counsel's decisions regarding whether to call or impeach

witnesses, to elicit certain testimony or to have a witness declared hostile, and to hire an

expert were reasonable strategic judgments. See, e.g., United States v. Best, 219 F.3d

192, 201-02 (2d Cir. 2000) ("[C]ounsel's decision as to 'whether to call specific witnesses –

even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in

professional representation.'") (citations omitted); Mills v. Scully, 826 F.2d 1192, 1197 (2d

Cir. 1987) (finding that failure to elicit a witness' prior conflicting grand jury testimony on

cross-examination was sound trial strategy); United States v. Nersesian, 824 F.2d 1294,

1320-22 (2d Cir. 1987) (holding that decisions whether to call any witnesses on behalf of

defendant, whom to call as witnesses, whether to engage in cross-examination, and to what

extent to cross-examine are all strategic in nature); Murden v. Artuz, 253 F. Supp. 2d 376,

389 (E.D.N.Y. 2001) ("In general, whether or not to hire an expert is the type of strategic

choice by counsel that may not be second-guessed on habeas corpus review."). Moreover,

counsel's decision to reject the various defense theories advocated by Jenkins, in favor of

attempting to establish an underlying motive to fabricate the abuse allegations, constituted a

sound tactical effort. See Wells v. Miller, No. 02-CV-5778, 2003 WL 23185759, at *14

(E.D.N.Y. Oct. 23, 2003) (stating that counsel's decision not to pursue a defense "more

vigorously was based on what was arguably his reasonable professional judgment").

Indeed, the defense theories cited by Jenkins may have compromised his credibility before

the trier of fact. Further, an overall review of the record indicates that Jenkins' counsel

properly represented him in all respects. Counsel was knowledgeable of the facts and

circumstances of the case, made the proper objections, filed the proper motions, and

-16-

effectively cross-examined the prosecution's witnesses.

Beyond mere speculative allegations, Jenkins has failed to show that these purported errors of trial counsel either fell below an objectively reasonable standard of representation or prejudiced his defense.  The Court cannot grant habeas relief based upon unsubstantiated conclusions, opinions or speculation.  See Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (asserting that federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); Williams v. Burge, No. 02-CV-0695, 2005 WL 2179423, at *16 (N.D.N.Y. Aug. 15, 2005) (Peebles, M.J.), adopted, No. 02-CV-0695, Docket No. 35 (N.D.N.Y. Dec. 7, 2005) (Hurd, J.); see also Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995).  Accordingly, the County Court's decision rejecting these claims was not an unreasonable application of Strickland.

As to allegations nine and ten, Jenkins claims his trial counsel was ineffective by failing to preserve for appeal claims of a repugnant verdict and prosecutorial misconduct. Regarding the repugnant verdict claim, in People v. Tucker, the New York Court of Appeals articulated New York's rule regarding repugnant verdicts:

> When there is a claim that repugnant . . . verdicts have been rendered in response to a multiple-count indictment, a verdict as to a particular count shall be set aside only when it is inherently inconsistent when viewed in light of the elements of each crime as charged . . . . The critical concern is that an individual not be convicted for a crime on which the jury has actually found that the defendant did not commit an essential element, whether it be one element or not at all.  Allowing such a verdict to stand is not merely inconsistent with justice, but is repugnant to it. . . . [A] conviction will be reversed only in those instances where acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other crime, as charged, for which the guilty verdict was rendered.

People v. Tucker, 431 N.E.2d 617, 617-19 (N.Y. 1981) (citations omitted); see also N.Y. CPL § 300.30(5) ("Two counts are 'inconsistent' when guilt of the offense charged in one

necessarily negates guilt of the offense charged in the other.").  To determine whether the verdict is "inherently self-contradictory," a court must examine the essential elements of each count as charged.  People v. Trappier, 660 N.E.2d 1131, 1133 (N.Y. 1995) (quoting Tucker); accord People v. Loughlin, 559 N.E.2d 656, 657-58 (N.Y. 1990); see also Sweet v. Bennett, 353 F.3d 135, 143 (2d Cir. 2003) (Walker, C.J., concurring).[16]

Jenkins' repugnant verdict theory is two-fold.  First, Jenkins claims that the verdict of guilt for sexual abuse in the first degree should be set aside because the verdict of not guilty for sodomy in the first degree negated an essential element of the sexual abuse charge, that is, sexual contact.  Docket No. 10 at 20-21.  However, these verdicts are perfectly consistent.  Jenkins was convicted under New York Penal Law § 130.65(3), which provides that a person is guilty of sexual abuse in the first degree when he subjects another person to sexual contact and the other person is less than eleven years old.  N.Y. Penal Law § 130.65(3).  In addition, Jenkins was charged under the section of the former sodomy statute providing that a person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse with another person who is less than eleven years old.  N.Y. Penal Law § 130.50(3) (2000).

A comparison of the elements of the crimes as examined by the judge establishes that the acquittal of the charge of sodomy in the first degree did not negate any of the

---

[16]  This rule does not appear to differ when a claim of repugnant verdict is asserted in a non-jury trial.  See, e.g., People v. Gassett, No. 3404/2003, 2004 WL 1852854, at *8 (N.Y. Sup. Ct. May 27, 2004) ("[T]he same standard is used in jury and nonjury trials in determining whether a verdict is, in fact, repugnant."); see also Harris v. Rivera, 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions. . . . [S]urely we must presume that they follow their own instructions when they are acting as factfinders.").

elements of sexual abuse in the first degree.  Based on the facts in evidence, the judge

found that Jenkins engaged in sexual contact with K.G. but did not engage in deviate sexual

intercourse, and such a verdict is not inherently contradictory.  See People v. Fontanez, 679

N.Y.S.2d 222, 225 (4th Dep't 1998) (rejecting defendant's claim of repugnant verdict where

he was convicted of sexual abuse in the first and second degrees but acquitted of sodomy

in the first and second degrees); see also People v. Kimbro, 655 N.Y.S.2d 481, 482 (1st

Dep't 1997); People v. Moselle, 542 N.Y.S.2d 425, 425 (4th Dep't 1989); People v. Pilich,

513 N.Y.S.2d 829, 830 (2d Dep't 1987).

Second, Jenkins claims that the verdict of not guilty on the charge of sodomy in the

first degree "due to lack of evidence as to sexual conduct" negates an essential element of

attempted sodomy in the first degree.  Docket No. 10 at 21.  A person is guilty of an attempt

to commit sodomy when, with intent to commit sodomy, he engages in conduct which tends

to effect the commission of deviate sexual intercourse.  See N.Y. Penal Law § 110.00.

Contrary to Jenkins' claim, the trial court found insufficient evidence of deviate sexual

intercourse to convict Jenkins of sodomy in the first degree.  However, based on the facts

adduced at trial, the court found sufficient evidence to find that Jenkins engaged in conduct

to effect the commission of deviate sexual intercourse with the intent to engage in such

intercourse.  See subsection II(B) supra.  The attempted sodomy conviction is fully

consistent with the acquittal for sodomy in the first degree.  See, e.g., People v. Martinez,

608 N.Y.S.2d 261, 262 (2d Dep't 1994) (finding that guilty verdict of attempted sale of a

controlled substance was not repugnant despite acquittal of the actual sale of the controlled

substance); see also People v. Ladson, 619 N.Y.S.2d 133, 134 (2d Dep't 1994) (rejecting

repugnant verdict claim and reasoning that "the court, as finder of facts, had the option of

-19-

basing its verdict on the attempted commission of one of the charged felonies"); People v. Farrell, 593 N.Y.S.2d 333, 334 (2d Dep't 1993) (stating that guilty verdict for attempted second degree burglary was not repugnant to acquittal for second degree burglary since the elements of the crimes are not identical).

Since the verdicts were not repugnant, the failure of trial counsel to raise a repugnant verdict objection at trial did not prejudice Jenkins. Therefore, defense counsel was not ineffective under Strickland. See Dukes v. McGinnis, No. 99 Civ. 9731, 2000 WL 382059, at *12-14 (S.D.N.Y. April 17, 2000) (Peck, M.J.), adopted, No. 99-9731, Docket No. 15 (S.D.N.Y. May 19, 2000) (Wood, J.).

As to Jenkins' ineffective assistance claim for failure to preserve his claims of prosecutorial misconduct, the Due Process Clause of the Fourteenth Amendment guarantees defendants the right to a fair trial. U.S. Const. Amend. XIV, § 1. Prosecutorial misconduct violates this due process right when the misconduct alleged is so severe and is of sufficient significance to infect the trial, resulting in the denial of the petitioner's right to a fair trial. Greer v. Miller, 483 U.S. 756, 765 (1987) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); Blissett v. LeFevre, 924 F.2d 434, 440 (2d Cir. 1991). In evaluating a claim of prosecutorial misconduct, the alleged misconduct must be placed into context and the court should consider the severity of the alleged misconduct, the curative measures taken, and the likelihood of conviction absent any misconduct. Blissett, 924 F.2d at 440. The court should then determine if the petitioner has shown actual prejudice in light of the totality of the circumstances surrounding the trial court conviction. Samuels v. Mann, 13 F.3d 522, 526-27 (2d Cir. 1993).

Here, Jenkins contends that the prosecutor improperly made remarks during

-20-

summation regarding the intellectual capacity of the victim and the victim's lack of sexual

knowledge.  Docket No. 10 at 6-7.  A review of the prosecutor's conduct during the trial

shows that there was no conduct that was so severe as to deprive Jenkins of a fair trial.

"Under New York law, statements during summation are permissible if they constitute a 'fair

comment on the evidence' at trial and reasonable inference therefrom, or a 'fair response to

remarks made by the defense counsel during summation.'"  Roman v. Filion, No. 04 Civ.

8022, 2005 WL 1383167, at *18 (S.D.N.Y. June 10, 2005) (Peck, C.M.J.) (quoting People v.

Perez, 794 N.Y.S.2d 439, 440 (2d Dep't 2005) and citing People v. Halm, 611 N.E.2d 281,

282 (N.Y. 1993)), adopted, No. 04-8022, Docket No. 16 (S.D.N.Y. Dec. 20, 2005) (Wood,

J.); see also Tolliver v. Greiner, No. 02 CV 0570, 2005 WL 2179298, at *13 (N.D.N.Y. Sept.

8, 2005) (Treece, M.J.), adopted, 2005 WL 2437021 (N.D.N.Y. Sept. 30, 2005) (Kahn, J.).

By commenting on the victim's age, apparent lack of sexual knowledge, and intellect, the

prosecutor's summation simply challenged defense counsel's theory as articulated in his

summation that the victim fabricated the abuse.

     Jenkins also alleges that the prosecutor improperly elicited testimony on direct

examination from Investigator Mark Klosowski regarding Jenkins' arrest on charges

unrelated to the abuse of K.G.  Docket No. 10 at 8.  Specifically, Investigator Klosowski

testified that he interviewed Jenkins "on 7/16/99, and that's also when I arrested Mr. Jenkins

for some other charges."  T. 90-91.  The trial court already was aware of Jenkins' criminal

history, which was previously presented to the judge during various bail proceedings.  RA.

42a-66a.  As the factfinder at trial, the judge undoubtedly discounted the reference to

Jenkins' prior arrests.  See Harris, 454 U.S. at 346.  Therefore, the investigator's statements

were not so prejudicial as to deprive Jenkins of a fair trial.  Since the prosecutor did not

engage in misconduct, the failure of trial counsel to object did not constitute ineffective assistance.

Accordingly, the foregoing allegations of ineffective assistance of trial counsel should be denied in their entirety.


### D.  Procedural Default

Respondent alleges that Jenkins' claims of prosecutorial misconduct and repugnant verdict, asserted as the second and third grounds of his second amended petition, are procedurally barred.  Docket No. 47, Mem. of Law at 9-12.  A federal habeas court is precluded from reviewing a petition if the state court's rejection of the argument rested on "independent and adequate state grounds." Coleman v. Thompson, 501 U.S. 722, 736 (1991); Jones v. Stinson, 229 F.3d 112, 117 (2d Cir. 2000).  This occurs when the last state court rendering a judgment in the case clearly and expressly held that its judgment rested on a state procedural bar.  Harris v. Reed, 489 U.S. 255, 262 (1989); Jones, 229 F.3d at 118.

Here, the Appellate Division rejected Jenkins' prosecutorial misconduct claim, stating that "his claims of prosecutorial misconduct, based upon the elicitation of certain testimony and summation remarks, were not preserved by appropriate objection." Jenkins, 751 N.Y.S.2d at 651 (citing New York's contemporaneous objection rule codified in CPL § 470.05(2)).  The Appellate Division also found Jenkins "did not preserve for appellate review, by motion to set aside or modify the verdict, his contention that the verdict was repugnant." Id. (citing CPL § 330.30 and People v. Alfaro, 489 N.E.2d 1280 (N.Y. 1985)). New York's contemporaneous objection rule is an "adequate and independent" state ground

for procedural default where defense counsel has failed to object to a prosecutor's

misconduct.  See Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996); Velasquez v.

Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).  Moreover, the requirement that a defendant move

to set aside or modify the verdict to challenge the verdict as repugnant in a non-jury case

also constitutes an adequate and independent state procedural ground.  See, e.g., Estrada

v. Senkowski, No. 98 CIV. 7796, 1999 WL 1051107, at *12-13 (S.D.N.Y. Nov. 19, 1999)

(stating that New York's requirement that a defendant must challenge an alleged

inconsistent verdict in a jury trial before the jury is discharged constitutes adequate and

independent state procedural ground).  Accordingly, Jenkins' repugnant verdict and

prosecutorial misconduct claims are procedurally barred.

Two exceptions exist which permit review of a claim otherwise procedurally barred.

First, review may occur if a petitioner "demonstrate[s] cause for the default and actual

prejudice as a result of the alleged violation of federal law."  Coleman, 501 U.S. at 750;

Restrepo v. Kelly, 178 F.3d 634, 637-38 (2d Cir. 1999).  "Cause" requires a showing that

"some objective factor external to the defense impeded counsel's efforts to raise the claim

in state court," Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 127 (2d Cir. 1995) (citation

and internal quotations omitted), or that the basis for a claim was not reasonably available

to counsel, see Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994).  Jenkins appears to

allege that his trial counsel's failure to preserve the repugnant verdict and prosecutorial

misconduct claims caused his procedural default.  However, as discussed supra, Jenkins

has failed to demonstrate his counsel was ineffective.  See subsection (II)(C)(2)(b) supra.

Given that the verdict was not repugnant and the prosecutor did not engage in misconduct,

defense counsel's failure to pursue these meritless claims did not constitute ineffective

-23-

assistance.  Where, as here, no cause has been established, a court need not determine whether a petitioner suffered actual prejudice.  Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985).  Second, a procedural default may be excused if a petitioner demonstrates that the failure to consider the claim would result in a "fundamental miscarriage of justice," a standard which requires a petitioner to show he is "actually innocent."  Lebron v. Mann, 40 F.3d 561, 564 (2d Cir. 1994).  Jenkins makes no claim of actual innocence, nor would the record here support such a claim.  Accordingly, neither exception applies.

Therefore, the second amended petition on these grounds should be denied as procedurally barred.[17]

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

---

[17] In any event, even if Jenkins' repugnant verdict claim was not procedurally barred, this allegation is not cognizable on federal habeas review.  See United States v. Powell, 469 U.S. 57, 58 (1984); see also Harris, 454 U.S. at 345 ("Inconsistency in a verdict is not a sufficient reason for setting it aside."); Estrada, 1999 WL 1051107, at *13-14 ("[I]nconsistent jury verdicts are not a ground for habeas relief."); Williams v. Artuz, No. 98 CIV 7964, 2002 WL 989529, at *8 (S.D.N.Y. May 15, 2002) ("A claim of inconsistent or repugnant verdicts presents no issue upon which federal habeas corpus relief could be granted.").

REVIEW.  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of Health and</u>

<u>Humans Servs.</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a),

6(e).

**IT IS SO ORDERED.**

Dated: February 13, 2007
      Albany, New York

_____
United States Magistrate Judge